**RECORD NO. 13-4667**

In The

# United States Court Of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# ALVIN LEE EDGE,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

——————————

**BRIEF OF APPELLANT**

——————————

**Denzil H. Forrester**
THE LAW OFFICES
  OF DENZIL H. FORRESTER
**3325 Washburn Avenue, Suite 103**
**Charlotte, NC  28205**
**(704) 632-9992**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA 23219
804-249-7770  ♦  www.gibsonmoore.net

**TABLE OF CONTENTS**

PAGE:

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF JURISDICTION ............................................................ 1

ISSUES PRESENTED FOR REVIEW ....................................................... 2

STATEMENT OF THE CASE ................................................................... 2

STATEMENT OF THE FACTS ................................................................. 3

SUMMARY OF ARGUMENT .................................................................. 6

ARGUMENTS ........................................................................................... 7

    I.    Whether the defense was denied a fair opportunity to cross examine prosecution witness, Junious Brandt ..................................... 7

        A.    Standard of Review .................................................................. 7

        B.    Discussion ................................................................................ 7

    II.    Whether the district court's sentence prohibits appellant from marrying his fiancée ...................................................................... 14

        A.    Standard of Review .................................................................. 14

        B.    Discussion ................................................................................ 14

            Edge has a fundamental right to marry ..................................... 14

CONCLUSION ......................................................................................... 20

REQUEST FOR ORAL ARGUMENT ..................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**PAGE(S):**

**FEDERAL CASES:**

*Apprendi v. New Jersey*,
    530 U.S. 466 (2000)...................................................................................14

*Cody v. Caterisano*,
    631 F.3d 136 (4th Cir. 2011) .......................................................................18

*Davis v. Alaska v. Davis*,
    415 U.S. 308 (1974)......................................................................................7

*Delaware v. Van Arsdall*,
    475 U.S. 673, 106 S. Ct. 1431, 87 L. Ed. 2d 674 (1986) ............................12

*Giles v. California*,
    554 U.S. 353 (2008)....................................................................................16

*Higgs v. United States*,
    711 F. Supp. 2d 479 (MD 2010)....................................................................7

*Keeney v. Heath*,
    57 F.3d 579 (7th Cir. 1995) .........................................................................19

*Loving v. Virginia*,
    388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967) .................................15

*Medina v. United States*,
    259 F.3d 220 (4th Cir. 2001) .......................................................................18

*Nesari v. Tayor*,
    806 F. Supp. 2d 848 (E.D. Va 2011) ...........................................................18

*O'Neal v. McAninch*,
    513 U.S. 432, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995) ............................13

*State v. Harris*,
    35 N.C. App. 401, 241 S.E.2d 370 (1978 N.C. App.)....................................9

ii

*State v. Barbour,*
  153 N.C. App. 500, 570 S.E.2d 126 (2002 N.C. App.)...................................9

*United States v. Barile,*
  286 F.3d 749 (4th Cir. 2002) ........................................................................11

*United States v. Bostian,*
  59 F.3d 474 (4th Cir. 1995) ...........................................................................7

*United States v. Foster,*
  634 F.3d 243 (4th Cir. 2011) ........................................................................16

*United States v. Greenwood,*
  796 F.2d 49 (4th Cir. 1986) ..........................................................................12

*United States v. Hassouneh,*
  199 F.3d 175 (4th Cir. 2000) ..........................................................................7

*United States v. Lancaster,*
  96 F.3d 734 (4th Cir. 1996) ............................................................................7

*United States v. Lentz,*
  383 F.3d 191 (4th Cir. 2004) ..........................................................................7

*United States v. Mackins,*
  315 F.3d 399 (4th Cir. 2003) ........................................................................14

*United States v. Mitchell,*
  1 F.3d 235 (4th Cir. 1993) ............................................................................11

*United States Fid. & Guar. Co. v. United States,*
  837 F.2d 116 (3d Cir. 1988) .........................................................................18

*Waters v. Gaston County,*
  57 F.3d 422 (4th Cir. 1995) ....................................................................15, 19

*Williams v. New York,*
  337 U.S. 241 (1949).......................................................................................14

*Wolford v. Angelone*,
38 F. Supp. 2d 452 (W.D. VA. 1999)............................................................14

*Zablocki v. Redhai*l,
434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978) ..................................19

**STATUTES:**

18 U.S.C. § 922..................................................................................................2

18 U.S.C. § 922(g)(1).........................................................................................1

18 U.S.C. § 924(a)(2).........................................................................................3

18 U.S.C. § 924(e) ..........................................................................................1, 2

18 U.S.C. § 3231 ................................................................................................1

18 U.S.C. § 3553 ................................................................................................6

18 U.S.C. § 3553(a) .......................................................................................15, 18

18 U.S.C. § 3583(b)(2).......................................................................................3

18 U.S.C. § 3742(a) ...........................................................................................1

28 U.S.C. § 1291 ................................................................................................1

**STATE STATUTES:**

N.C.G.S. § 14-72................................................................................................8

N.C.G.S. § 50 ...................................................................................................18

iv

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. amend. I ................................................................6

U.S. Const. amend. II ...............................................................5

U.S. Const. amend. VI ...........................................................6, 7

**SENTENCING GUIDELINE:**

U.S.S.G. § 4A1.1(c) ................................................................3

**RULES:**

Fed R. App. P. 4(b)(1)(A) ........................................................1

Fed. R. Evid. 403 ...................................................................10

Fed. R. Evid. 609 ...................................................................11

Fed. R. Evid. 609(a)(2) .......................................................7, 9, 10

**MISCELLANEOUS:**

North Carolina Crimes: A guidebook on the Elements of Crime
(by Jessica Smith Sixth Edition 2007) ...................................8, 9, 10

## STATEMENT OF JURISDICTION

On September 21, 2011, a one count Bill of Indictment was filed against Alvin Lee Edge.  He was the sole defendant named on the Bill of Indictment in the Western District of North Carolina, Charlotte Division.  Count One of the Bill of Indictment charged defendant with Unlawful Possession Transport of Firearms, in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(e).  The occurrences of possession listed in Count One is said to have taken place between December 2010, and February 4, 2011, in Charlotte, Mecklenburg County within the Western District of North Carolina.  On February 7, 2012, Mr. Edge appeared before United States District Judge Robert J. Conrad, Jr., in Charlotte, North Carolina, and stood trial.  On February 8, 2012, a jury returned a guilty verdict on Count One of the Bill of Indictment against Alvin Lee Edge.  The district court entered judgment on August 8, 2013.  The Notice of Appeal was filed on September 5, 2013.  Criminal defendants are allowed fourteen calendar days after the entry of judgment to appeal pursuant to the Federal Rules of Appellate Procedure, 4(b)(1)(A).  Mr. Edge's Notice of Appeal was filed in a timely manner.  The district court has jurisdiction pursuant to 18 U.S.C. § 3231.  This Court's jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.      Whether the defense was denied a fair opportunity to cross examine prosecution witness, Junious Brandt?

II.     Whether the district court's sentence prohibits appellant from marrying his fiancée?

## STATEMENT OF THE CASE

This case originated from a Bill of Indictment filed in the Western District of North Carolina in the Charlotte Division.  On September 23, 2011, Alvin Lee Edge was charged in Count One of the Bill of Indictment with, Felon in Possession of Firearm, in violation of Title 18 U.S.C. §§ 922 and 924(e).

On October 21, 2011, Edge was arraigned on the Bill of Indictment.  On January 11, 2012, Edge filed a Motion To Suppress the admission of incompetent evidence.  On January 11, 2012, Edge filed a Stipulation regarding his conviction for a prior felony.  On February 6, 2012, Edge filed a Notice of Constitutional claim.  On February 7, 2012, a Second Motion in Limine was filed by Edge.  On February 7, 2012, a jury was empaneled.  The trial lasted until a guilty verdict was rendered on February 8, 2012.

On February 13, 2013, the Presentence Report was published.  (JA 544) Edge filed an objection to the Presentence Report.  (JA 542-543)  On March 19, 2013, a final Presentence Report was published.  A notice of sentencing hearing

2

was filed on June 7, 2013.  The sentencing date was set for July 9, 2013.  On July 8, 2013, Edge filed a sentencing memorandum. (JA 571-575)  Prior to sentencing a communique from Edge to his fiancée, Kassondra Smith, was intercepted by the detention facility.  It was admitted into evidence at the sentencing hearing. (JA 576-579)

Pursuant to U.S.S.G. 4A1.1(c) Edge received the benefit of a four-point cap resulting in a subtotal criminal history score of 17 points.  Based on the U.S.S.G. a total offense level of 24 and a criminal history category of VI, the guideline range for imprisonment is 100-125 months.  However, the statutory terms of imprisonment for Count One is not more than 120 months, 18 U.S.C. § 924(a)(2).

On July 9, 2013, Edge-was sentenced by the district court to 120 months for the conviction on Count One.  He is to serve a term of at least one year but not more than three years of supervised release pursuant to 18 U.S.C. § 3583(b)(2).  The Judgment and Statement of Reasons were filed on August 23, 2013.  The Notice of Appeal was filed on September 5, 2013.

## STATEMENT OF THE FACTS

Junious Brandt, a prosecuting witness, lives in the same neighborhood as relatives of Alvin Lee Edge.  (JA 254)  Junious Brandt is a beggar. (JA 253-254) Junious Brandt has a history of drug use. (JA 256)  Junious Brandt lives next to a house where adult males hang out during the day.  (JA 254-255)  Junious Brandt

3

describes his own neighborhood as unsafe. (JA 254)   Junious Brandt believes, depending on the situation, it is okay to lie. (JA 258-259, 363)  Junious Brandt was awarded $564 because the judge believed his story. (JA 547)   Junious Brandt reported that on January 23, 2011, Alvin Edge asked Mr. Brandt for money while both were at a local grocery store. (JA 366, 477)  Brandt lives on a well-traveled street in a rough neighborhood close to the center of Charlotte, North Carolina. (JA 367, 482)   Brandt believes the awkward encounter at the grocery store is the impetus for a midnight firearm-assault on his personal property that same evening. (JA 55-59) Mr. Brandt reports he saw a silver sport utility vehicle traveling on the street in front of his house. (JA 252)  Days later Brandt reported seeing a silver colored SUV repeatedly driving on the road in front of his house.  Brandt recorded the license tag number and forwarded it to Charlotte-Mecklenburg Police Department (CMPD).   An inquiry with the North Carolina Division of Motor Vehicle revealed the owner of the particular silver SUV is Melody Edge, the then wife of Alvin Edge.  Edge has a maternal aunt and other family members who live on the same street as Mr. Brandt.  (JA 454)

On February 4, 2011, CMPD was advised Mr. Edge was located at a house located near the 8000 block of Barncliff Road in Charlotte, North Carolina.   Law enforcement wanted to serve an arrest warrants on Edge.  The Barncliff location is the home of a female friend, Soibhan Gill.  Ms. Gill gave consent for the officers to

search her residence for firearm used in the shooting at or about the 1700 block of Merriman Avenue, Charlotte, North Carolina. As a result of the search an Arms Corporation Model 16, semiautomatic .22 caliber rifle was located in the passenger seat of a silver colored Chevrolet Equinox sport utility type vehicle. Ballistics testing confirmed the .22 caliber rifle shell casings found on Brandt's property on January 23, 2011, are a forensic match to the rifle seized from Mrs. Melody Edge's vehicle at Ms. Gill's residence. The firearm was imported into North Carolina.

On January 9, 2012, Mr. Edge signed a stipulation regarding his prior felony convictions. (JA 52) At trial, Mr. Brandt admitted he asked a neighbor, for charity. Ms. Kassondra Smith the girlfriend/fiancée of Mr. Edge testified on his behalf at trial. (JA 443) The district court limited questions posed by the defense to Junious Brandt. (JA 262) The defense asserted numerous objections to argumentative, irrelevant and leading question. (JA 242) Pertinent to this case was the curtailment of impeachment by the defense of Junious Brandt based on his prior conviction of a crime involving dishonesty. (JA 259-264)

Edge did not waive his Second Amendment right to bear arms. He filed a Notice of his Constitutional claim before trial. At trial, Kassondra Smith testified to her relationship with Mr. Edge. (JA 443) Ms. Smith testified to her love for Alvin Edge. (JA 445) Ms. Smith said, multiple times in open court, she is not afraid of Mr. Edge. (JA 446-448) Via cross examination by the prosecutor, Ms.

Smith indoctrinated the courtroom into the crude vernacular which is pervasive yet acceptable in their communication. (JA 448) At sentencing a letter intercepted by the local sheriff's department was presented to the district court. (JA 576-579)

Edge was never charge nor convicted of the recriminations surrounding the intercepted letter. The district court sentence Edge as though he had been convicted for assault on a female or found to be responsible for being a domestic menace to Ms. Smith after a civil hearing.  Justification for the sentence was cited at 18 U.S.C. § 3553. (JA 583)  Ms. Smith was not a prosecution witness.  There is no evidence she request assistance from the Government.

## SUMMARY OF ARGUMENT

Appellant contends his conviction should be reversed for the following reason, judicial errors.   First, Appellant contends the jury verdict was erroneously arrived at due to the abridgement of his Sixth Amendment right to confront a witness against him.   Secondly, Appellant's First Amendment to associate with his love interest, his fundamental right to marry, was infringed upon by the sentencing court.

# ARGUMENTS

## I. Whether the defense was denied a fair opportunity to cross examine prosecution witness, Junious Brandt?

### A. Standard of Review

"A district court's decision to admit or exclude evidence is reviewed for abuse of discretion." *United States v. Bostian*, 59 F.3d 474, 480 (4th Cir. 1995); *United States v. Hassouneh*, 199 F.3d 175 (4th Cir. 2000); *United States v. Lancaster*, 96 F.3d 734, 744 (4th Cir. 1996) (*en banc*). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Lentz*, 383 F.3d 191, 201 (4th Cir. 2004).

### B. Discussion

Edge is aware a jury's verdict is worthy of veneration. However, such reverence presupposes the decision was reached after a fair trial. He maintains the verdict in this matter should be seen as suspect because Junious Brandt was not subjected to a full and fair examination by the defense. (JA 259-265) Edge believes he was denied his right to confrontation of this witness under the Sixth Amendment and seminal case law. *Davis v. Alaska* v. *Davis*, 415 U.S. 308 (1974); *Higgs v. United States*, 711 F. Supp. 2d 479, 518 (MD 2010).

Federal Rules of Evidence Rule 609(a)(2) governs the: Impeachment by Evidence of a Criminal Conviction; it states:

> For any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement.

The North Carolina General Statute Section 14-72 is entitled Larceny of Property; receiving stolen goods or possessing stolen good. (a) Larceny of goods of the value of more than one thousand dollars ($1000) is a Class H felony.  The receiving or possessing of stolen goods of the value of more than one thousand dollars ($1000) while knowing or having reasonable grounds to believe that the goods are stolen is a Class H felony.  Larceny as provided in subsection (b) of this section is a Class H felony. Receiving or possession of stolen goods as provided in subsection (c) of this section is a Class H felony. Except as provided in subsections (b) and (c) of this section, larceny of goods knowing or having reasonable grounds to believe them to  be stolen, where the value of the property or goods is not more than one thousand dollars ($1000), is a Class 1 misdemeanor.  In all cases of doubt, the jury shall, in the verdict, fix the value of the property stolen.

A concise version of the statute is found in a book entitled North Carolina Crimes: A guidebook on the Elements of Crime (by Jessica Smith Sixth Edition 2007).  It lists the elements of the Class 1 misdemeanor as follows:  A person guilty of this offense

(1)     Takes personal property in the possession of another

(2)     And carries it away

(3)     Without the consent of the possessor and

(4)     With the intent to deprive the possessor of its use permanently,

(5)     Knowing that the take was not entitled to it.

The guidebook further cites authority which states:

> A larceny by trick occurred, for example, when the defendant obtained a vehicle by requesting and receiving consent to take it for a test drive, when his true intent was to keep the vehicle (153 NC App. 500).  When the consent was obtained by trick or fraud, it is not necessary to allege the fraudulent manner in which the property was taken or to use the word "by trick" in the criminal pleading ([*State v. Harris*], 35 N.C. App. 401, 241 S.E.2d 370 (1978 N.C. App.); [*State v. Barbour*], 153 N.C. App. 500, 570 S.E.2d 126 (2002 N.C. App.). *North Carolina Crimes* at 242

Prosecution witness Junious Brandt was convicted in 2007 of misdemeanor larceny in North Carolina. (JA 264)  The trial of the matter being appealed took place in 2012, less than 10 years after the conviction of Junious Brandt for said larceny.  Appellant's contention is not predicated on the 10 year limit of use; however, it is mentioned now because the district court seemed to have raised that as a threshold in making its ruling. (JA 262)  The prosecution also focused on the alleged reference to a prior felony conviction.  Appellant contends a logical conclusion is that the government needed a diversion, the red herring-prior felony, in order to launch a cursory response to stymied admission of the prior misdemeanor conviction from coming into evidence. (JA 260)  The transcript indicates trial counsel's use of FRE 609 Section (a)(2) was to impeach the witness

base on his dishonest act; not because it was a felony. Trial counsel's tactic was to show the jury Junious Brandt had been convicted of a dishonest act. The hope was the jury will be suspicious of his entire testimony. After all, the prosecution had propped up Brandt as a veteran of a foreign war, in its pleading and subsequently at trial. (JA 56, 482)

The statute is readily interpreted by high courts in North Carolina and readers of the *North Carolina Crimes* book since at least 2007. The statute readily incorporates the fraud or trick element which the district court requested. The revelation is dispositive and in favor of appellant. Trial counsel could not quote verbatim case law at the time it was requested. (JA 268) Trial counsel did read the text of FRE 609(a)(2) to the trial judge. (JA 264). It clearly deals with the dishonest intent or mindset of the accused or convicted, regardless of passage of time. Explicit in the text of the statutes is the specific knowledge of knowingly possessing stolen property. Explicit in the text of the statute is the specific knowledge of knowingly receiving stolen property. A chief distinction between felony and misdemeanor larceny in North Carolina is the $1000 threshold amount, required for the crime to be designated as a felony. Trial counsel and the text of the state statute are in congruence that Brandt could be impeached by his 2007, prior conviction because the statute does connote the element of dishonesty. The district court disagreed, and cited FRE 403 balancing of prejudice as a reason. (JA 268)

10

The trial court emphasized the importance of dishonesty or fraud not being readily apparent in the text and the lack of a felony classification of the statute. (JA 259-265) Therein is the reason why the federal rule of evidence was misapplied at trial. (JA 262 and 268) The misapplication was because the state statute was misconstrued by the arbiter of evidentiary matters at trial. The trial court thought the question by counsel to witness befitted a felony conviction greater than 10 years or was an attempt to refresh Brandt's recollection. It was neither. The district court ruled the North Carolina statute does not readily address dishonesty on the part of the perpetrator. (JA 263) (JA 259) Even so the court should have given counsel the latitude to clarify that belief.

> Rule 609 - Impeachment by prior conviction: The standard of review of a trial court's determination that the probative value of evidence of a prior conviction outweighs its prejudicial effect to the defendant is whether the court abused its discretion. *United States v. Mitchell*, 1 F.3d 235, 244-45 (4th Cir. 1993). A district court's exclusion of impeachment evidence is reviewed for abuse of discretion. *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002).

The circumstance regarding the inadmissibility of Junious Brandt's larceny conviction is dubious. In retrospect it appears the district court was giving a make-up call to the prosecution, because of the marijuana-use admission by Brandt on cross-examination. (JA 263) However, there was no need for a make-up call because the trial court could have also thought a beggar's association with a sport-utility-vehicle-driving male could be drug related. (JA 546) The Assistant United

States Attorney was cognizant of the line of questioning. (JA 482)   In the drug

culture euphemisms are used in lieu of the actual descriptive words. (JA 304)

Edge should not bear the detriment, in the form of an unnecessary make-up ruling,

because of the trial court's understanding or misunderstanding of his theory of

defense. (JA 482)  It appears errors were committed and in an attempt to cure past

mistakes, Edge was deprived of his right to a fair trial.  If the trial court erred in

limiting the cross-examination, then the reviewing court must determine whether

the error was "harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475

U.S. 673, 106 S. Ct. 1431, 87 L. Ed. 2d 674 (1986); *United States v. Greenwood*,

796 F.2d 49, 53 (4th Cir. 1986).

     It is text book that a witness may be confronted by his prior dishonest deeds.

Here the jury was precluded from deliberating on the actual state of Brandt's

veracity due to an error by the district court.  Overruling the objection by itself

may not have reached the level to warrant action by this Court.   Now coupled with

the fact that, Junious Brandt is a beggar, recovering drug abuser, an admitted

circumstantial liar, and a thief; these facts gives cause to question his testimony.

However, the full cumulative effect of his lack of veracity was successfully

stymied by the trial court's ruling to exclude his prior larceny conviction.

     The jury should have been given the chance to ponder whether any

engagement between Edge and Brandt was fabricated.   Though the abridgment of

cross examination might seem inconsequential in light of the ballistic match to Edge, the mere act of interference by the district court gives pause for concern to the litigant. It leaves the litigant with unanswered questions regarding the resulting verdict. The facts demonstrate appellant's trial was tainted by omissions of a witness's veracity from the deliberation room. A reasonable jury could have used the additional evidence to find doubt. Appellant is left with the mindset the trial court controlled more of his fate then it should have in a jury trial. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432 at 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995) cited in *Bryan v. United States*, 2012 U.S. Dist. Lexis 189646 at page 152. Appellant believes the jury verdict of guilty is erroneous, because the jury did not know of Brandt's criminal conviction. The district court's error led to the resulting imprisonment of Edge. Therefore the flawed evidentiary ruling prejudiced Edge. However, the major injury to Edge is denial of his constitutional right to fully confront the prosecuting witness.

## II.    Whether the district court's sentence prohibits appellant from marrying his fiancée?

A.    Standard of Review

"Preserved Error - If a defendant has made a timely and sufficient objection of constitutional error in the trial court, and so preserved his objection, de novo is the proper standard of review.  If preserved, the error will be reversed unless it was harmless beyond a reasonable doubt. The government bears the burden of proof that the error was harmless.  *United States v. Mackins*, 315 F.3d 399, 405 (4th Cir. 2003).  However, strict scrutiny is required when the regulations interferes directly and substantially with the right to marry. *Wolford v. Angelone*, 38 F. Supp. 2d 452, 460 (W.D. VA. 1999).

B.    Discussion

### Edge has a fundamental right to marry

The district court could have recommended for Edge to enter an abuser program or anger management treatment, it did not.   The sentencing court summarily ruled this appellant shall not have contact with the lady he intends to marry, Kassondra Smith. (JA 526) "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range". *Apprendi v. New Jersey*, 530 U.S. 466, at 481 (2000); *Williams v. New York*, 337 U.S. 241, 246 (1949).  In this matter, appellant asserts the district court exceeded the bounds of its domain.  It is well-settled law that the Constitution embraces a

14

fundamental right to marry. *Waters v. Gaston County*, 57 F.3d 422, 425 (4th Cir. 1995) (citing *Loving v. Virginia*, 388 U.S. 1, 12, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967)).

In setting the parameters of this argument Edge does not intend to forecast the longevity, success, or blissfulness of a marriage to Kassondra Smith. Appellant's intent is to preserve his fundamental right to marry Kassondra Smith, his longtime girlfriend and now fiancée. (JA 365, 443).   Marriage being one of the more personal rights enjoyed by American is also one of the more universal rights of mankind, notwithstanding the foresight or wisdom of a sentencing court on the success of the union.  Even in light of a dubious prediction of the marriage by the trial court; Edge and Ms. Smith should be able to squander their active years in a seemingly incompatible partnership without the court's interference.

The sentencing court did not explicitly prohibit the two from marrying.  The district court forbid appellant from associating with his fiancée family under the ambit of 18 U.S.C. § 3553(a) (JA 526, 583) The order by the sentencing court is tantamount to banning marriage between the two individuals with a loving interest. (JA 522)  Edge has a 10 year period of confinement and three years of supervised release.  (JA 580)  Edge will be approximately 44 years old before he can legally marry the lady of his life.   The pronouncement was rendered under the auspices of protecting Ms. Smith from a person the district court had jurisdiction over.

Appellant contents the sentencing judge did not have jurisdiction over the domestic violence related matter, a crime which was not charged. The domestic matter was not properly presented to the district court.

Though the intent was disguised the impact is to place distance between Edge and his dream to marry Ms. Smith. That dream happens to be a fundamental right afforded to Edge. A judge may pronounce and enforce terms of a protective order upon adjudication of an issue wherein the complainant appears and testifies against the perpetrator. This is done in domestic cases thousands of times per year. A recent Supreme Court ruling is instructive on the appearance of the prosecution witness at trial in domestic-violence cases. The United States Supreme Court instructs that prosecution witness must appear at the domestic hearing. *Giles v. California*, 554 U.S. 353, 377 (2008). The Court held it was fundamental to our system of justice. *Giles* was to curtail law enforcement from testifying about events surrounding a domestic case by extrapolating regarding the circumstance. Kassondra Smith had previously explained that such rants are common and insignificant among the pair. The prosecution knew she did not want their help. (JA 522) This Circuit also warned against law enforcement speculating about events it perceives base on mundane acts. *United States v. Foster*, 634 F.3d 243 (4th Cir. 2011). In this matter, Ms. Smith did not appear at the sentencing hearing. Even under the lax evidentiary rules, during the sentencing process, no written

submission was submitted by Ms. Smith. Appellant was not charged nor convicted by federal or state sovereignty of the allegations.

Voyeurism is not limit to "followers" on social media. Unfortunately, being in custody allows others to view your personal postings. The evidence of acrimony in the relationship was the crude and rude note intercepted by the jailors. (JA 576-579) The parlance of undereducated individuals should be regarded as babble limited to an insular subculture and not taken as sophisticated communication by by the larger group. Ms. Smith said as much in an earlier hearing. (JA 448) As any other individuals with mutual affection they had their disagreements. Yet they managed to communicate after Edge's trial. Their plan was to get married.

The length of the relationship demonstrates a sincere yearning to unite permanently by the paramours. Edge is in custody so his thoughts of marriage are aspirational. One would think the other party would abandon the relationship. To the contrary, Ms. Smith has continued to visit Edge, pay his commissary, and call his counsel. All things a wife would do for her husband. Sua sponte, the district court set out to rescue a damsel who was not in distress. In the process of this seemingly benevolent act the court ignited the destruction of Edge's constitutionally protected dream of marriage.

The district court erred in its sentencing day ruling, when viewed in light of the authority regarding Mr. Edge's presumption that he has a right to marry his fiancée. The right to marry trumps Section 3553(a). Federal officials do not possess discretion to violate constitutional rights or federal statutes. *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) citing *United States Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988).

The sanctity of the fiancé/fiancée relationship extends to noncitizens living outside of the United States. *Nesari v. Tayor*, 806 F. Supp. 2d 848, 865 (E.D. Va 2011). In immigration cases Courts "have power to confer citizenship only in strict compliance with terms of an authorizing statute." *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011). The same premise applies in criminal law. Courts must rule in strict compliance of statute. Pursuant to North Carolina General Statute § 50, courts may issue a protective order after adjudication of the domestic issue. This case is void of such a hearing or trial on the merits of the domestic allegations against Edge vis-à-vis Ms. Smith. Though testimony of Melody Edge's issues against her then husband came into evidence at trial, it cannot be used in lieu of none by fiancée Kassondra Smith, at the sentencing hearing. The missing prosecution witness should have been a fatal blow to the advancement of the sentencing court's position that it was operating under the ambit of protecting an alleged victim.

The Supreme Court recognized the limitations of this right, however, in *Zablocki v. Redhail*, 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673 (1978). While invalidating a Wisconsin statute that required non-custodial parents with child support obligations to obtain leave of court before getting married, the Court held that "not every restriction on the right to marry violated the Constitution; rather 'reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be legitimately imposed.'" *Waters v. Gaston County*, 57 F.3d 422 at 425 (4th Cir. 1995) (quoting *Zablocki*, 434 U.S. at 386-87). *Waters* addressed nepotism, an issue not relevant to the Edge ban on marriage. An anti-fraternization regulation was upheld because it did not directly and substantially interfere with the right to marry. *Keeney v. Heath*, 57 F.3d 579 (7th Cir. 1995).

Edge maintains he and Ms. Smith will not be working at the same facility (anti-nepotism) nor will she be employed at a detention facility where his is housed (anti-fraternization). The factors in which the Court has allowed exceptions or applied a rational basis test is not applicable here. The effect of the court's judgment is an unmitigated ban on appellant's right to marriage. It may be contorted that Edge may marry another person. However, the act of marriage is so personal that courts have long recognized a person's attraction to a specific individual is unique. No one looks to a fiancé engage to a fiancée outside of this

county and say marry a United States citizen.  The human bond is greater than the uniqueness of real estate.  Therefore, the court created an outright deterrence of the Edge-Smith marriage.  This is a direct infringement on appellant's right to marry.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully prays that the Court vacate the appellant's conviction and sentence and remand the case to the district court.  Additionally, the undersigned prays this Court will review the record for other possible errors.

## REQUEST FOR ORAL ARGUMENT

Counsel respectfully requests oral argument on behalf of the Mr. Edge

January 14, 2014.

Respectfully Submitted,

/s/ Denzil H. Forrester
Denzil H. Forrester
Attorney at Law
3325 Washburn Avenue
Suite 103
Charlotte, NC  28205
(704)632-9992 voice
(704) 632-9969 facsimile

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>4,710</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/ Denzil H. Forrester   </u><br>Denzil H. Forrester

Dated: January 14, 2014

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 14, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE
UNITED STATES ATTORNEY
United States Courthouse
100 Otis Street, Room 233
Asheville, NC 28801
(828) 271-4661

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA 23219